UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

| | |
|---|---|
| WILLIAM HUDSON #408204, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHIGAN DEPARTMENT )<br>OF CORRECTIONS, et al., )<br>)<br>Defendants. )<br>_____ ) | Case No. 2:08-cv-208<br><br>HON. ROBERT HOLMES BELL<br><br><br><br>**OPINION** |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

    I.        Factual Allegations

Plaintiff William Hudson #408204, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Michigan Department of Corrections (MDOC), MDOC Director Patricia Caruso, Warden Dave Bergh, Deputy Warden Daniel Lesatz, Captain Keena M. Jones, Resident Unit Manager Denver McBurney, Assistant Resident Unit Manager Jim Rankin, Assistant Resident Unit Manager Peggy Carberry, Inspector Unknown Contreras, Assistant Resident Unit Manager Denise L. Gerth, and Mail Room Clerk S. Andrews. In addition, Plaintiff has filed a motion to amend his complaint to add Warden / Superintendent Catherine Bauman as a Defendant in this case (docket #4). The court will grant this motion and add Defendant Bauman as a party.

Plaintiff alleges in his complaint that on September 10, 2007, Defendants Contreras and Andrews issued a notice of mail rejection for mail containing a stapled publication entitled "3-in-1 letter to prisoners with questions and answers" dated August 10, 2007, by Robert Kelly of The American's Bulletin. Plaintiff requested an administrative hearing in kites dated October 19, 2007, and October 23, 2007. Plaintiff states that the document contained Uniform Commercial Code (UCC) material. Plaintiff also filed a grievance regarding the mail rejection, which was denied. In the step II response to this grievance, Defendant Bergh stated that The American's Bulletin was on the restricted publication list due process the fact that it advocated violating state or federal law. On October 31, 2007, Defendant Gerth conducted an administrative hearing in which she deprived Plaintiff from receiving mail pertaining to the Uniform Commercial Code (UCC). Petitioner's mail was subsequently destroyed.

On November 7, 2007, Plaintiff wrote to the Michigan Secretary of State and requested UCC forms. Defendant Jones confiscated Plaintiff's outgoing letter to the Secretary of State unlawfully, as it was addressed to a public official. Plaintiff alleges that on November 8, 2007, Defendant Jones issued a notice of intent to conduct an administrative hearing on Petitioner for sending the letter to the Secretary of State in which he requested forms to file a UCC complaint. In the notice of intent, Defendant Jones stated that "prisoners are prohibited from sending mail regarding actions that can be taken under the UCC which could be used to harass or threaten another individual, including the filing of a lien against the individual" and are prohibited "from receiving . . . mail if it is a threat to the security, good order, or discipline of the facility . . . may facilitate or encourage criminal activity, and . . . for the purpose of operating a business enterprise within the facility."

On February 13, 2008, Defendant Andrews issued a notice of intent on Plaintiff rejecting incoming mail because it was not received directly from an approved publisher or vendor. The mail consisted of a bound booklet entitled "memorandum in support of application of habeas corpus." On March 25, 2008, Defendant Gerth conducted a hearing and it was proven that the legal material did come from the publisher. However, Plaintiff was not given his mail, which he claims violated his right of access to the courts.

On March 12, 2008, Plaintiff presented four court documents to be notarized by Defendant McBurney, who improperly confiscated the documents. These documents included (1) a notice of administrative remedy, points, and agreements, (2) an affidavit and Freedom of Information Act (FOIA) request for investigation and counterclaim for forfeiture of bond, and (3) a brief in support of praecipe to dismiss for lack of subject matter jurisdiction, fraud, and invalid

judgment. Defendant McBurney wrote a notice of intent on Plaintiff, asserting that the documents were contraband because they appeared to be "UCC related" and contained many blank spaces. On May 27, 2008, Defendant Rankin conducted a hearing and upheld the confiscation and destruction of Plaintiff's documents. Defendant Rankin stated that Plaintiff had admitted the documents could affect security at some point. Defendant Lesatz subsequently rejected Plaintiff's grievance on this issue and Defendant Bergh upheld this decision at step II.

Plaintiff claims that Policy Directive 05.03.118, Paragraph HH, No. 23, dated January 1, 2006, stating that prisoners are prohibited from receiving:

> Mail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual. This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC.

constitutes a violation of his rights under federal law. Plaintiff states that this policy unlawfully prevents Plaintiff from employing a just and lawful means of remedy. In addition, Plaintiff claims that he is being prevented from learning about this area of law. Plaintiff states he seeks to use this knowledge to file a tort action to obtain certain instruments which would prove that the state courts committed fraud in order to acquire a criminal conviction of Plaintiff. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief, including having Defendant sentenced to one year in the federal penitentiary and fined for contempt.

    II.    <u>Failure to state a claim</u>

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a

claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants' conduct in depriving him of materials relating to the UCC and inspecting his outgoing mail to the Secretary of State's office violated his First Amendment right of access to the courts. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate

must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property.  *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).  Because Plaintiff has failed to allege that he suffered an actual injury as required by *Lewis*, the court will dismiss his access to courts claims.

Plaintiff also claims that his due process rights were violated when Defendants deprived him of a mailing which was on the restricted publications list.  The provision regarding the Restricted Publications List is contained in MDOC Policy Directive 05.03.118.

Policy Directive 05.03.118 provides in pertinent part:

> N.   Prisoners shall not be allowed to receive the following items or publications as they are considered to be a threat to the order and security of an institution or to the rehabilitation of prisoners:
>
>> 3.   Material describing or showing acts of homosexuality, sadism, masochism, bestiality, sexual acts involving children, or any other unlawful sexual behavior;
>
> O.   If staff believes that mail to a prisoner is in violation of these guidelines a hearing shall be held promptly to determine whether the mail meets the criteria for an excluded item or publication.
>
> P.   If the hearing upholds the exclusion and the excluded item is a newspaper, magazine, catalog, book or similar publication, the institution shall submit a copy of the hearing report and a copy of the

>publication to the Deputy Director, BCF, for final determination. If the Deputy Director reverses the hearing decision, the mail shall be given to the prisoner. If the Deputy Director agrees with the results of the hearing, the publication will be placed on the Department's Restricted Publication List. Once a publication is placed on the Restricted Publication List, an institution may exclude it without further hearing; however, notice of the rejected mail shall be sent to the prisoner stating that the publication is on the List.
>
>Q. The Restricted Publication List will be maintained in the Office of the Deputy Director, BCF. Information on additions or deletions to this list will be provided to all institutions.
>
>R. A decision to exclude any item must be based on a clear showing that the item is one of those listed above or that admission of the material will jeopardize the security and good order of the institution, or will interfere with a prisoner's rehabilitation. Exclusion is appealable through the grievance procedure.

It is clear from Policy Directive 05.03.118 that in order for a publication to be placed on the Restricted Publication List, it must have first received a hearing in which it was determined to be a threat to the order and security of the institution or to the rehabilitation of prisoners. In addition, Plaintiff had the opportunity to appeal the confiscation of the restricted materials through the grievance process. Therefore, if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right

to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Plaintiff's due process claims regarding material which was confiscated and destroyed following a hearing are properly dismissed for the same reason.

Plaintiff claims that the MDOC policy regarding UCC materials is unconstitutional. The policy was originally issued by Defendant Caruso on March 30, 2004 in a Director's Office Memorandum (DOM 2004). This memorandum stated, in relevant part:

> Effective immediately, prisoners are no longer authorized to have any books, pamphlets, or forms or other material regarding actions that can be taken under the UCC; these materials shall be considered contraband since they can be used to facilitate criminal activity and pose a risk to the custody and security of the facility.

This memorandum was updated and changed several times before taking its current form in Policy Directive 05.03.118, Paragraph HH, No. 23, dated January 1, 2006, stating that prisoners are prohibited from receiving:

> Mail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual. This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC.

Plaintiff cites *Jones v. MDOC, et al.,* 2006 WL 2805643 (E.D. Mich., Sept. 28, 2006) (Hood, J.), and claims that Defendants conduct violates the holding in that case. In *Jones*, the Eastern District addressed the present language contained in the policy and found that it was impermissibly vague. The *Jones* court stated:

> The present language continues to allow only legal materials that provide a "scholarly" analysis of the UCC. As the Magistrate Judge noted in its [sic] initial Report and Recommendation, Defendants failed to show that a more narrowly-tailored directive could not serve the same legitimate governmental interest without infringing on the rights of individuals seeking legitimate but "non-scholarly" material pertaining to the UCC and that because a publication is "non-scholarly" it is created or can be used for illegitimate purposes.

*Jones*, 2006 WL 2805643 at *3.

In *Jones*, the court interpreted the policy directive as specifically excluding all legal materials relating to the UCC except those which provided a "scholarly" analysis of the UCC. This court disagrees with that conclusion, noting that the language excludes "mail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual." Although the policy directive specifically allows scholarly materials regarding the UCC, it does not specifically exclude all other materials.

Moreover, the court notes that the identical issue being raised by Plaintiff here was recently addressed in this district in *Lewis v. Caruso,* 2008 WL 4283652 (W.D. Mich., Sept. 10, 2008) (Neff, J.). In *Lewis*, the court addressed a prisoner complaint which concerned the seizure and destruction of Uniform Commercial Code (UCC) materials that were sent to the plaintiff through the mail. The court stated:

> It is well accepted that convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see also Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Operating a prison, however, is a difficult task requiring "expertise, planning, and the commitment of resources, all

>of which are peculiarly within the province of the legislative and executive branches of government." *Turner,* 482 U.S. at 85. Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson,* 241 F.3d 475, 481 (6th Cir.2001) (quoting *Wolfish,* 441 U.S. at 547).

*Lewis v. Caruso,* 2008 WL 4283652, slip op. p. 3.

The court noted that the plaintiff in *Lewis v. Caruso* had received an administrative hearing, during which the hearing officer stated:

>Michigan Department of Corrections Policy Directive 05.03.118 ... prohibits [prisoners] from receiving or possessing mail if it is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner, this includes:
>
>>Mail for the purpose of operating a business enterprise from within the facility Paragraph (D7). The only legitimate purpose of possessing blank Uniform Commercial Code forms would be to conduct commercial business enterprises.

*Lewis v. Caruso,* 2008 WL 4283652, slip op. p. 2. The plaintiff in that case also asserted the holding in *Jones v. MDOC, et al.,* 2006 WL 2805643 in support of his claim. *Lewis v. Caruso,* 2008 WL 4283652, slip op. p. 2.

In *Lewis v. Caruso,* 2008 WL 4283652, the court applied the test set forth in *Turner* to the facts of the case. In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the

reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

> The court in *Lewis* explained:
>
> The abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented. *See, e.g., United States v. Gordon,* No. CV 205-158, 2005 WL 2237640 (S.D.Ga. Aug.25, 2005) (prisoners filed "facially absurd" liens and UCC financing statements designed to harass and intimidate government officials in the performance of their duties); *United States v. Orrego,* No. 04 CV 0008 SJ, 2004 WL 1447954 (E.D.N.Y. June 22, 2004) (prisoner purported to copyright his name, after which he filed fraudulent liens against various government officials for using his name without permission or payment); *Ray v. Williams,* No. CV-04-863-HU, 2005 WL 697041 (D.Or. Mar.24, 2005) (prisoner engaged in fraudulent scheme by which he filed false UCC filings against government officials seeking payment for unauthorized use of his copyrighted name); *United States v. Martin,* 356 F.Supp.2d 621 (W.D.Va.2005) (prisoner filed fraudulent UCC financing statements naming himself as the secured party for a $108,000,000.00 debt owed him by various government officials); *United States v. Brum,* No. CIV. A. 105CV110, 2005 WL 1606584 (E.D.Tex. July 1, 2005) (prisoner filed fraudulent liens and UCC financing statements against the judge and prosecutor involved in his criminal conviction); *Cooperwood v. McDonald,* No. 2:05 CV 111,

> 2005 WL 1427718 (W.D.Mich., June 13, 2005) (prisoner filed a fraudulent lien "for infringement of his copyrighted name"); *United States v. Stouder,* No. 3:04-1044, 2005 WL 2715666 (M.D.Tenn. Sept.2, 2005) (prisoner filed fraudulent UCC financing statements against government officials in the amount of $300,000,000.00).
>
> That the MDOC has a legitimate penological purpose in preventing such behavior cannot seriously be questioned. It is well established that safety and internal security is a legitimate goal for prison administrators. *Overton v. Bazzetta,* 539 U.S. 126, 133, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003); *Thornburgh v. Abbott,* 490 U.S. 401, 415, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Hewitt v. Helms,* 459 U.S. 460, 473, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Turner,* 482 U.S. at 78, 86, 87, 92. The MDOC also has an interest in preventing prisoners from committing further crimes. The MDOC mail policy represents a rational means by which to achieve the legitimate goal of preventing prisoners from engaging in fraudulent and illegal behavior. While Policy Directive 05.03.118(HH)(23) prevents prisoners from possessing "books, pamphlets, forms or other material regarding actions that can be taken under the UCC," prisoners were still permitted to possess "publications in the law library, such as Michigan Compiled Laws Annotated, that set forth the statute or provide a scholarly legal analysis of the UCC." The Court concludes, therefore, that there exists a "valid, rational connection" between the policies at issue and a legitimate governmental interest.

*Lewis v. Caruso,* 2008 WL 4283652, slip op. p. 4. The court concluded that the remaining *Turner* facts did not weigh in the plaintiff's favor, noting that prisoners within the MDOC had adequate alternatives to possessing UCC materials because they could read a "wide variety of other political, economic, philosophical and legal materials" and that because all inmates are prohibited from engaging in business or commerce while incarcerated, the plaintiff had no need to possess UCC material. *Id.* at slip op. p. 5.

In this case, as in *Lewis v. Caruso*, Plaintiff has failed to show that the MDOC policy on UCC materials violates his constitutional rights.

> The resources of the MDOC are limited and the Court must accord "wide-ranging deference" to the solutions implemented by prison officials to combat the very serious problem of UCC-related fraud perpetrated by prisoners. Moreover, the burden of accommodating Plaintiff's access to commercial law materials would nullify any benefit the MDOC is seeking to achieve by by eliminating this material from the prison. The Court concludes, therefore, that the challenged policy was reasonably related to legitimate penological interests and satisfies the relevant legal standard.

*Lewis v. Caruso,* 2008 WL 4283652, slip op. p. 5.  Therefore, the court will dismiss this claim.

Finally, Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Mich. Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Mich. Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987).  In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the court will dismiss the Michigan Department of Corrections.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court dismisses the action, the court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the court will assess the appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the appellate filing fee in one lump sum.

This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: January 7, 2009                          /s/ Robert Holmes Bell
                                                                            ROBERT HOLMES BELL
                                                                            UNITED STATES DISTRICT JUDGE